Lindsey Barnhart (Bar No. 294995)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: +1 (650) 632-4700
Facsimile: +1 (650) 632-4806
Email: lbarnhart@cov.com

*Attorneys for Respondent J.P. Morgan*
*Chase National Corporate Services, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Ex Parte Application of<br><br>OLANREWAJU SURAJU and THE HUMAN AND ENVIRONMENTAL DEVELOPMENT AGENDA,<br><br>                Applicants,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from<br><br>YAHOO!, INC. and J.P. MORGAN CHASE, INC.,<br><br>                Respondents,<br><br>For use in Foreign Proceedings. | CASE NO. 3:22-mc-80072-SK<br><br>**J.P. MORGAN CHASE NATIONAL CORPORATE SERVICES, INC.'S OPPOSITION TO APPLICATION FOR LEAVE TO OBTAIN DISCOVERY UNDER 28 U.S.C. § 1782** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND .......................................................................................................... 3

    A.    The OPL 245 Deal. ....................................................................................... 3

    B.    The Nigerian Proceedings. ........................................................................... 4

    C.    Mr. Suraju Informally Pursues Discovery from JPMorgan Chase. ............... 5

    D.    Mr. Suraju and HEDA's § 1782 Application ................................................ 7

PROCEDURAL STANDARD ...................................................................................... 8

ARGUMENT ............................................................................................................... 9

I.    Applicants Have Not Met the Requirements for Obtaining Discovery Through § 1782. ............... 9

    A.    Applicants Have Not Established that They Seek Discovery From a Person Who Resides or Is Found in This District. ....................................................... 9

        1.    The "J.P. Morgan" Entities From Whom Applicants Seek Discovery Do Not "Reside" and Are Not "Found" in This District. ...................... 10

        2.    Whether Yahoo is Headquartered in This District Has No Bearing on Whether JPMCNCS Is "Found" Here. .................................................. 12

    B.    Applicants Have Not Established that the Broad Discovery They Seek Is "For Use in a Proceeding in a Foreign or International Tribunal." ................... 14

II.    The *Intel* Factors Support Denial of the Application. ............................................. 17

    A.    Applicants Have Not Established that the Discovery They Seek Is Unavailable Through the Nigerian Proceedings. ............................................................. 18

    B.    The Discovery Applicants Seek Would Be Unduly Burdensome and Intrusive. ............ 20

        1.    Respondent Has Already Incurred Significant Burden in Determining that the June 2011 Email and Its Metadata Have Not Been Retained. ................. 21

        2.    Petitioner's Remaining Requests Are Overbroad and Unduly Burdensome. ......... 21

III.    This Court Should Not Order JPMCNCS to "Consent" Sight Unseen to the Release of Any and All Documents Yahoo May Possess. ............................................................. 24

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alma M. v. Nulick*,
  2017 WL 117858 (E.D. Cal. Jan. 11, 2017) ...................................................14

*In re Al Sadeq*,
  2021 WL 2828810 (N.D. Cal. Mar. 30, 2021)...............................................17

*In re Application of Joint Stock Co. Raiffeinsenbank*,
  2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ..................................................3

*In re Ex Parte Application of NC Dengen Kaihatsu KK*,
  2019 WL 1061740 (N.D. Cal. Mar. 6, 2019).................................................23

*In re Ex Parte Application of Nokia Corp.*,
  2013 WL 6073457 (N.D. Cal. Nov. 8, 2013)..............................................20, 21

*In re Ex Parte Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ......................................8, 9, 10, 11, 18, 20, 23

*In re Application of Thai-Lao Lignite (Thailand) Co.*,
  821 F. Supp. 2d 289 (D.D.C. 2011) .........................................................10, 11

*In re Ex Parte Application to Take Discovery from Américo Fialdini Jr.*,
  2021 WL 253455 (D. Colo. Jan. 26, 2021)....................................................9

*In re Ex Parte Application Varian Med. Sys. Int'l AG*,
  2016 WL 1161568 (N.D. Cal. Mar. 24, 2016)..............................................18, 20

*Baxalta Inc. v. Genentech, Inc.*,
  2016 WL 11529803 (N.D. Cal. Aug. 9, 2016) ...............................................24

*Buckley v. Vidal*,
  50 F.R.D. 271 (S.D.N.Y. 1970) ............................................................14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 183944 (N.D. Cal. Jan. 17, 2013) .................................................20

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
  798 F.3d 113 (2d Cir. 2015)...............................................................14, 15

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*,
  2016 WL 5930275 (N.D. Cal. Oct. 12, 2016)................................................14

*In re Facebook, Inc.*,
  923 F. Supp. 2d 1204 (N.D. Cal. 2012) .....................................................13

*Franklin v. Ryko Corp.*,
  2008 WL 11334493 (C.D. Cal. Oct. 22, 2008)..............................................12, 13

*In re Government of Mongolia*,
  2009 WL 10712603 (M.D. Fla. Nov. 10, 2009) ..................................................................9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ........................................................................................8, 9, 20

*In re IPC Do Nordeste, LTDA*,
  2012 WL 4448886 (E.D. Mich. Sept. 25, 2012) ..............................................................19

*Khrapunov v. Prosyankin*,
  931 F.3d 922 (9th Cir. 2019) ..................................................................................8, 17

*Laub v. Horbaczewski*,
  2020 WL 7978227 (C.D. Cal. Nov. 17, 2020) ..............................................................24, 25

*MetaLab Design Ltd. v. Zozi Int'l, Inc.*,
  2018 WL 368766 (N.D. Cal. Jan. 11, 2018) ..............................................18, 19, 20, 21, 23

*In re Microsoft Corp.*,
  2006 WL 825250 (N.D. Cal. Mar. 29, 2006) .................................................................8

*Montanez v. Gerber Childrenswear, LLC*,
  2011 WL 13128157 (C.D. Cal. June 6, 2011) ...............................................................12

*In re NCAA Student-Athlete Name & Likeness Litig.*,
  2012 WL 161240 (N.D. Cal. Jan. 17, 2012) ...............................................................13

*In re Pioneer Corp.*,
  2018 WL 2146412 (C.D. Cal. May 9, 2018) ...............................................................20

*In re Pioneer Corp.*,
  2018 WL 4963126 (C.D. Cal. Aug. 27, 2018) ...............................................................21

*Rainsy v. Facebook, Inc.*,
  311 F. Supp. 3d 1101 (N.D. Cal. 2018) .......................................................2, 14, 17, 23

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ...............................................................................11

*Reynolds v. Binance Holdings Ltd.*,
  481 F. Supp. 3d 997 (N.D. Cal. 2020) ......................................................................11

*In re Sargeant*,
  278 F. Supp. 3d 814 (S.D.N.Y. 2017) ......................................................................15

*Schweickert v. Hunts Point Ventures, Inc.*,
  2014 WL 6886630 (W.D. Wash. Dec. 4, 2014) .............................................................13

*Soto v. City of Concord*,
  162 F.R.D. 603 (N.D. Cal. 1995) ............................................................................14

*In re Stati*,
  2018 WL 474999 (D. Mass. Jan. 18, 2018) ................................................................14

*In re Takai*,
2021 WL 5205583 (N.D. Cal. Nov. 9, 2021) ..................................................................22

*United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*,
870 F.2d 1450 (9th Cir. 1989) ...............................................................................12, 13

*In re Will Co.*,
2021 WL 5322653 (N.D. Cal. Nov. 16, 2021) ...........................................................8, 22

*Zeiger v. WellPet LLC*,
304 F. Supp. 3d 837 (N.D. Cal. 2018) .........................................................................9

**Statutes**

18 U.S.C. § 2702(b) ................................................................................................13

28 U.S.C. § 1782 .............................................................................1, 2, 7, 8, 9, 12, 14

**Rules**

Fed. R. Civ. P. 26(b)(1)..............................................................................................20

Fed. R. Civ. P. 34 ....................................................................................................12

Fed. R. Civ. P. 45 .....................................................................................................3

**Other Authorities**

Dentons ACAS-LAW, *Practice and Procedure for the Issuance and Use of Subpoenas Under
the Nigerian Legal System*, Lexology (Sept. 7, 2020),
https://www.lexology.com/library/detail.aspx?g=66ea4721-e481-4493-8d25-ffa6415d0be7............19

Fadesike Salu & Safiat Akande, Litigation and Enforcement in Nigeria:  Overview,
Thomson Reuters: Practical Law Country Q&A (Apr. 1, 2021),
https://tinyurl.com/bdcpa5t9 ....................................................................................19

**INTRODUCTION**

In this action under 28 U.S.C. § 1782, Olanrewaju Suraju asks for leave to obtain discovery in the United States that he says he may use in a civil defamation proceeding he initiated in Nigeria and a criminal proceeding in Nigeria that, though pending when he filed this Application, has since been dismissed.

Both proceedings arose from a dispute between Mr. Suraju, a Nigerian citizen, and the former Attorney General of Nigeria, Mohammed Bello Adoke.  Mr. Suraju represents that he is the chair of a Nigerian organization, the Human and Environmental Development Agenda ("HEDA"), that has been investigating Mr. Adoke's alleged role in the settlement of various disputes in 2011 relating to the ownership of an offshore oil field in Nigeria known as OPL 245.  As part of that investigation, Mr. Suraju accused Mr. Adoke of sending an email in June 2011 (the "June 2011 Email") in an effort to fraudulently induce JPMorgan Chase Bank, N.A. to release funds relating to that settlement—held in escrow for the Nigerian government—to a company allegedly owned by the former Nigerian Minister of Petroleum.  For his part, Mr. Adoke has accused Mr. Suraju of forging that email.  Acting on a complaint from Mr. Adoke, Nigerian police last year initiated criminal proceedings and charged Mr. Suraju with posting the email online despite knowing it was fake.  Mr. Suraju retaliated by filing a civil defamation action against Mr. Adoke in Nigeria.  Nigerian prosecutors have since withdrawn all criminal charges against Mr. Suraju.

Mr. Suraju and HEDA (together, "Applicants") filed this Application ostensibly to obtain discovery for use in Mr. Suraju's defamation proceeding (and in the criminal proceedings, which have since been dismissed).  Under 28 U.S.C. § 1782, foreign litigants may apply to a U.S. district court for leave to obtain discovery "for use" in foreign litigation.  In this case, Applicants ask this Court to issue subpoenas to Yahoo!, Inc. and J.P. Morgan Chase National Corporate Services, Inc. ("JPMCNCS") that request the June 2011 Email plus all other emails over eight-plus years between any @jpmorgan.com account and three Yahoo accounts belonging to Mr. Adoke and two other Nigerian citizens.

For at least three primary reasons, Applicants' petition should be denied.

*First*, Applicants have filed their petition against a non-existent entity and in the wrong district.  Their Application names J.P. Morgan Chase, Inc., which does not exist.  Their proposed subpoena names JPMCNCS, a New York-based entity that had nothing to do with the account opened for the Nigerian

government and, in any event, neither "resides" nor "is found" in this district.  *See* 28 U.S.C. § 1782(a) (a district court may order a person to give discovery only if the person "resides or is found" in the district). Mr. Suraju tries to bootstrap his subpoena to JPMCNCS to the Court's jurisdiction over Yahoo, arguing that the Court can order discovery from *JPMCNCS* because *Yahoo* is headquartered in this district.  But Yahoo's alleged connections to the Northern District of California are irrelevant to whether JPMCNCS "resides" or "is found" in this district.

*Second*, Applicants fail to meet the statutory prerequisites for compelling discovery from JPMCNCS (or any other entity of the bank) because they have not established that the sweeping discovery they seek is actually "for use" (*i.e.*, "relevant to the claims and defenses") in any ongoing Nigerian proceeding.  *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018) (Kim, M.J.).  Mr. Suraju has failed to advise this Court that Nigerian prosecutors have dropped all criminal charges against him, and that dismissed proceeding cannot provide a basis to seek discovery under § 1782.  The only foreign proceeding to which Mr. Suraju is currently a party is his civil defamation action against Mr. Adoke.  Mr. Suraju asks JPMCNCS to produce both the June 2011 Email and all emails over eight-plus years between any @jpmorgan.com address and three Yahoo accounts.  Although the June 2011 Email could ostensibly be relevant to his defamation action, that request is futile because the bank's counsel already informed Mr. Suraju that the decade-old email could not be located.  As to the remaining emails, Plaintiffs have never explained—in response to the bank's informal inquiries or in their Application— how these years' worth of emails could be relevant to any claim or defense in the defamation proceeding.

*Third*, even if Mr. Suraju and HEDA had met the statutory prerequisites to request discovery through § 1782—which they have not—two of the discretionary *Intel* factors would support denial of their Application.  *First*, § 1782 relief is neither necessary nor appropriate when an applicant can obtain the same materials through the foreign proceeding.  Here, Mr. Suraju can obtain the emails he seeks—from personal email accounts that he alleges belong to Mr. Adoke and two other Nigerian citizens—via discovery in the Nigerian defamation proceeding.  In fact, Mr. Suraju obtained authorization in the dismissed criminal proceeding to serve subpoenas on several persons, including one of the accountholders named in his Application here, and Mr. Suraju is permitted under Nigerian civil procedure to do the same

in the pending defamation action.  *Second*, Mr. Suraju's requests are unduly burdensome.  Mr. Suraju requests a search of at least eight years' worth of emails from every @jpmorgan.com account without limitation, even though the June 2011 Email is the only email he has identified as relevant to his defamation suit.  That request is wildly impracticable and certainly not narrowly tailored to whatever issues remain in that proceeding.

For these reasons and those set forth below, this Court should deny the Application.[1]

## BACKGROUND

### A.      The OPL 245 Deal.

In 1998, Nigeria granted a license for an offshore oil field known as OPL 245 to Malabu Oil and Gas Limited ("Malabu"), a company allegedly owned by Nigeria's then-oil minister, Chief Dan Etete. After years of disputes between Malabu, subsidiaries of Royal Dutch Shell, and the Nigerian government over the rights to the field, the parties negotiated a settlement in 2011.  In April 2011, Malabu agreed to surrender all of its claims in respect of the oil field to the Nigerian government, which would then grant the license to subsidiaries of Shell and Eni.  JPMorgan Chase Bank, N.A. provided an escrow account and depository account to facilitate the transfer of settlement funds between the parties to the 2011 settlement. The bank was not a party to the settlement itself.

The current Nigerian government has accused former Attorney General Adoke and others of accepting bribes to secure the settlement of the ongoing disputes and award the license to OPL 245 to subsidiaries of Shell and Eni.  The government also alleged that Mr. Adoke and members of Nigeria's finance ministry had conspired to defraud Nigeria by inducing the bank to release funds from the settlement, which were held in the Nigerian government's depository account, to Malabu.

Mr. Suraju, who chairs HEDA, a nongovernmental organization based in Nigeria, represents that he has been investigating Mr. Adoke's role in the OPL 245 deal.  *See* Appl. at 1–4 (Dkt. 1).  Mr Suraju

---

[1] This opposition explains why the Application should be denied.  If the Court grants the Application, JPMCNCS reserves all rights under Fed. R. Civ. P. 45 to object to, move to quash, or otherwise challenge the subpoena.  *See In re Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *7 (N.D. Cal. Nov. 2, 2016).

alleges that, as part of a scheme to defraud the Nigerian government, Mr. Adoke (or someone acting on his behalf) sent an email from agroupproperties@yahoo.com to Adebayo Osolake (bayo.o.osolake@jpmorgan.com) on June 21, 2011 with the subject line "block 245 malabu resolution agreement" (the "June 2011 Email").  *See id.* at 1–2, 4; Decl. of Anita Oloruntola ("Oloruntola Decl.") Ex. E (Dkt. 1-2 at 9–12).  Applicants attach to their Application an email, also dated June 21, 2011, in which Mr. Osolake forwards the June 2011 Email to another employee of the bank, Mr. Oluwatosin Adewuyi (the "Forwarded Email").  Decl. of Catherine Sweetser ("Sweetser Decl.") Ex. B (Dkt. 1-1 at 17–44).

### B.    The Nigerian Proceedings.

Mr. Adoke denies sending the June 2011 Email.  Last year, he filed a criminal complaint accusing Mr. Suraju of forging the June 2011 Email and of fabricating a supposed audio recording of an interview between Mr. Adoke and an Italian reporter.  *See* Appl. at 1–2, 4–5; Oloruntola Decl. Ex. D (Dkt. 1-2 at 4–8).  Acting on that complaint, Nigerian prosecutors initially charged Mr. Suraju with circulating both the email and the audio recording online, despite allegedly knowing that the files were fabricated.  *See* Appl. at 4–5; Decl. of Andrew Soukup ("Soukup Decl.") Ex. 1, Attach. 3.  But prosecutors have since dropped all charges against Mr. Suraju.  *See* Appl. at 1 (acknowledging that prosecutors dropped the charges related to the June 2011 Email before Mr. Suraju filed this Application); Declaration of Godwin Omoaka, SAN ("Omoaka Decl.") ¶ 5 & Ex. 1 (attaching Order from the Federal High Court of Nigeria, Abuja Judicial Division, dismissing all remaining criminal charges against Mr. Suraju on May 10, 2022).[2]

Mr. Suraju has since sued Mr. Adoke for defamation in the High Court of the Federal Capital Territory, Abuja, Nigeria.  Appl. at 1; Oloruntola Decl. ¶ 1 (Dkt. 1-2 at 2).[3]  The "Statement of Claim" in that action alleges that Mr. Adoke falsely accused Mr. Suraju of forging the June 2011 Email and of colluding with prosecutors to incriminate Mr. Adoke.  Oloruntola Decl. Ex. F at 5–14 (Dkt. 1-2 at 18–27).

---

[2]  The former criminal case, *Federal Republic of Nigeria v. Olanrewaju Suraju*, Charge No. FHC/ABJ/370/2021, was filed in the Federal High Court of Nigeria, Abuja Judicial Division.

[3]  The civil defamation case is captioned *Suraju v. Adoke*, Suit No. CL/1353/2021.

1    Mr. Suraju asserts that he also is considering "a possible malicious prosecution" suit against Mr.

2  Adoke.  Appl. at 2.  However, Mr. Suraju has not brought any such action to date, and Applicants have

3  not provided any details of this hypothetical claim.

4    **C.    Mr. Suraju Informally Pursues Discovery from JPMorgan Chase.**

5    In November 2021, Mr. Suraju's U.S. counsel wrote to the bank to request a copy of the June 2011

6  Email and its metadata.  Soukup Decl. Ex. 1 at 1–2.  Mr. Suraju also requested copies of "all

7  correspondence . . . between any employees of J.P. Morgan . . . and agroupproperties@yahoo.com or the

8  company A Group Properties."  *Id.* at 2.

9    Over the next three months, the bank's outside counsel met and conferred with Mr. Suraju's

10  counsel in good faith.  Based on the bank's internal inquiries, counsel informed Mr. Suraju's counsel that

11  the bank had conducted a search for the original June 2011 Email but could find only a copy of the

12  Forwarded Email.  *See* Soukup Decl. Ex. 2 at 10–11.  Counsel offered to provide Mr. Suraju with the

13  Forwarded Email and its metadata, but explained that the metadata did not identify the IP address for the

14  sender of the original June 2011 Email from agroupproperties@yahoo.com.  *Id.*

15    Mr. Suraju demanded more.  His counsel asked for a search of the records of 62 bank employees

16  for emails from the agroupproperties@yahoo.com account.  *See* Soukup Decl. Ex. 3.  When the bank's

17  counsel explained that this request was unduly burdensome, Mr. Suraju's counsel instead asked the bank

18  to search the emails of one custodian, Simon Lloyd, for any emails "regarding the [OPL 245] deal and/or

19  Mr. Adoke and/or agroupproperties@yahoo.com."  *Id.*, Ex. 2 at 9–11.  In an effort to be cooperative, the

20  bank agreed to search emails from Mr. Lloyd's account in the period 2011-2013 that had been retained in

21  connection with litigation in England between JPMorgan Chase Bank, N.A. and the Nigerian government.

22  The bank did not find any emails to, from, or cc'ing the agroupproperties@yahoo.com address and

23  confirmed this to Mr Suraju's counsel.  *See id.* at 7.

24    That still was not enough for Mr. Suraju.  His counsel requested yet another search of Mr. Lloyd's

25  account, this time for any emails from May 28, 2011 to July 31, 2011 that were "regarding the [OPL 245]

26  deal" and "from or to or cc'ing" one of six different people.  *Id.* at 6.  As noted above, the bank did not

27  have any involvement in the OPL 245 "deal," to the extent Mr. Suraju uses this term to refer to the 2011

28

settlement reached between the Nigerian government, Malabu, Shell, and Eni.  The bank merely provided escrow accounts to facilitate the transfer of settlement funds between the parties.

Again, in a good faith effort to be accommodating, the bank agreed to conduct yet another search of Mr. Lloyd's emails, this time looking for any emails between May 28, 2011 and July 31, 2011 that "contain[ed] the phrase 'agroupproperties' or 'A Group Properties' and were sent to, from, ccing, or bccing" the six people Mr. Suraju had identified.  *Id.* at 3.  Once again, the search returned no hits.  *Id.*

Mr. Suraju's counsel then made a new request on January 26, 2022.  Counsel asked the bank to "consent" to Yahoo producing emails in response to a subpoena.  *See* Soukup Decl. Ex. 4.  The draft subpoena Mr. Suraju's counsel provided called on Yahoo to produce, among other things:

- all correspondence between any @jpmorgan.com or @chase.com account and agroupproperties@yahoo.com (from 2011 to 2014);

- all emails between any @jpmorgan.com account and mbadoke@yahoo.com;

- all emails between mbadoke@yahoo.com and agroupproperties@yahoo.com (from 2010 to 2013 and June 2017 to the present); and

- all emails from agroupproperties@yahoo.com, mbadoke@yahoo.com, ayaymalami@yahoo.co.uk, and ayamalami@yahoo.co.uk (from June 2017 to the present).

*Id.* Attach. 2.  The bank's counsel explained that it could not consent to this broad request, particularly not when the proposed subpoena included multiple new Yahoo addresses whose relevance to the Nigerian proceedings was unclear.  *See* Soukup Decl. Ex. 2 at 2.  The bank's counsel offered, however, to put in writing (1) that the bank would not object to Yahoo producing a copy of the June 2011 Email and (2) that the bank would answer questions from Yahoo about the production of other emails.  *Id.* at 3–4.

Following this exchange, the bank learned that Nigerian prosecutors had taken steps to dismiss the criminal charges against Mr. Suraju relating to the June 2011 Email.  On March 2, 2022, the bank's counsel asked Mr. Suraju's counsel to "identify as specifically as possible the basis why your client still believes there is a basis under 1782 to request information from Yahoo or JPMC, including the specific foreign . . .

proceedings where any discovery your client might obtain under 1782 [would] be used and how that information might be used." *Id.* at 1.  Mr. Suraju's counsel never answered.

### D.    Mr. Suraju and HEDA's § 1782 Application.

Instead, on March 17, 2022, Mr. Suraju and HEDA filed this Application pursuant to 28 U.S.C. § 1782.  The Application names Yahoo!, Inc. and J.P. Morgan Chase, Inc. (a non-existent entity) as respondents.  It requests that the Court issue two subpoenas, one to Yahoo and the other to JPMCNCS. *See* Appl. at 1; Sweetser Decl. Ex. A, Attach. 1 ("Yahoo Subpoena") (Dkt. 1-1 at 4–10); Sweetser Decl. Ex. A, Attach. 2 ("JPMCNCS Subpoena") (Dkt. 1-1 at 11–16).  The requests across the two subpoenas overlap substantially.  Although Mr. Suraju and HEDA had been conferring with the bank's counsel for months, they never sent the bank a copy of the JPMCNCS Subpoena they now ask the court to issue.

Some of the requests in the JPMCNCS Subpoena overlap with documents that Mr. Suraju had already informally requested from the bank through his counsel (as set out above), and which the bank's counsel explained that it had not been able to locate after a reasonable search.  These include Mr. Suraju's requests for the June 2011 Email, along with its attachments, metadata, and routing information, and the sender's IP address (Requests 1, 3, 4, 5).  *See* JPMCNCS Subpoena, Attach. A at 2 (Dkt. 1-1 at 16).

But many requests in the JPMCNCS Subpoena include information that Mr. Suraju and his counsel never requested from the bank or its counsel during the meet-and-confer process, such as:

- "Any and all correspondence, whether email or otherwise, between any persons ending with the suffix @jpmorgan.com and the email address agroupproperties@yahoo.com from January 1, 2011 to January 1, 2014," as well as any "metadata, attachments, tracking information, or any other attached data" for such correspondence (Requests 2, 3);[4]

- "Any and all emails and their attachments between persons ending with the suffix @jpmorgan.com and the email address mbadoke@yahoo.com, together with any and all

---

[4] As mentioned above, during meet-and-confer efforts, Mr. Suraju initially asked the bank to search 62 custodians for emails connected to agroupproperties@yahoo.com, and then requested and received the results of two searches of custodian Simon Lloyd's emails.  *See* Soukup Decl. Ex. 3.

1     metadata, attachments, tracking information, or any other data for that email correspondence"

2     (Request 6); and

3     • "Any and all emails and their attachments from ayaymalami@yahoo.co.uk and/or

4     agroupproperties@yahoo.com from January 1, 2010 to January 1, 2013, and from June 1,

5     2017 to present" (Request 7).

6 *Id.*  In addition to the subpoena, Applicants state that they are "seeking an order compelling the employer

7 of the recipient of the emails, J.P. Morgan Chase, to consent to" Yahoo's production of the emails that

8 Applicants seek in the Yahoo Subpoena.  Appl. at ii.

9 **PROCEDURAL STANDARD**

10     An applicant seeking discovery pursuant to 28 U.S.C. § 1782 must satisfy three statutory

11 requirements:  (1) the person from whom the applicant seeks discovery must "reside[]" or be "found" in

12 the district; (2) the discovery must be "for use in a proceeding in a foreign or international tribunal"; and

13 (3) the applicant must be an "interested person."  28 U.S.C. § 1782(a).  If these requirements are met,

14 "[t]he statute authorizes, but does not require," the district court to permit the discovery.  *Intel Corp. v.*

15 *Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004).  "[T]he district court still retains substantial

16 discretion to permit or deny the requested discovery."  *Khrapunov v. Prosyankin*, 931 F.3d 922, 926 (9th

17 Cir. 2019); *see In re Microsoft Corp.*, 2006 WL 825250, at *3 (N.D. Cal. Mar. 29, 2006) ("Section 1782

18 does not give either foreign tribunals or litigants before them any 'right' to assistance."); *In re Ex Parte*

19 *Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1035 (N.D. Cal. 2016) ("[S]imply because a court

20 has the authority under Section 1782 to grant an application does not mean that it is required to do so.").

21     When exercising its "wide discretion in deciding whether to permit discovery under § 1782," a

22 district court should consider several prudential factors, known as the *Intel* factors.  *In re Will Co.*, 2021

23 WL 5322653, at *2 (N.D. Cal. Nov. 16, 2021).  These factors include: (1) whether the discovery is

24 available through the foreign proceeding; (2) the nature and character of the foreign tribunal and

25 proceeding, and whether the foreign government or court would be receptive to judicial assistance from

26 the United States; (3) whether the discovery request is an "attempt to circumvent foreign proof-gathering

27

28

restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

## ARGUMENT

### I.   Applicants Have Not Met the Requirements for Obtaining Discovery Through § 1782.

The Court should deny the Application because Mr. Suraju and HEDA have not met the statutory prerequisites for obtaining discovery through 28 U.S.C. § 1782.  Even assuming that Mr. Suraju's status as the claimant in a civil defamation suit in Nigeria makes him an "interested person," *see Intel*, 542 U.S. at 256, he has not shown that the J.P. Morgan entities named in the Application "reside" or are "found" in this district or that the discovery would be "for use" in any foreign proceeding, *see* 28 U.S.C. § 1782(a).

### A.   Applicants Have Not Established that They Seek Discovery From a Person Who Resides or Is Found in This District.

Section 1782(a) authorizes a district court to order a person to give discovery only if the "person resides or is found" in that district.  28 U.S.C. § 1782(a).  An entity is "found" in a district only if it engages in "systematic and continuous local activities" there.  *See Qualcomm*, 162 F. Supp. 3d at 1035 ("When applied to corporations, the word 'found' 'may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence.'" (citation omitted)).  That means the entity's contacts, taken as a whole, must be "sufficiently substantial, continuous, and systematic as to support a finding" akin to "general jurisdiction" in the district.  *Id.* at 1038 & n.58 (citation omitted); *see also Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 848 (N.D. Cal. 2018) ("General jurisdiction exists where a defendant's activities are so 'continuous and systematic as to render them essentially at home in the forum . . . .'" (citation omitted)); *In re Government of Mongolia*, 2009 WL 10712603, at *4 (M.D. Fla. Nov. 10, 2009) (looking to general jurisdiction precedents for guidance on whether a company's activities in a district were sufficiently "systematic and continuous" for it to be "found" there for purposes of § 1782); *In re Ex Parte Application to Take Discovery from Américo Fialdini Jr.*, 2021 WL 253455, at *3 (D. Colo. Jan. 26, 2021) (same).

The Application identifies two J.P. Morgan entities:  "J.P. Morgan Chase, Inc." is listed in the Application itself, and "J.P. Morgan Chase National Corporate Services, Inc." is listed as the target of the

proposed JPMCNCS Subpoena.  Although Mr. Suraju and HEDA advance two alternative theories of why these entities are "found" in the Northern District of California, neither theory works.

### 1. The "J.P. Morgan" Entities From Whom Applicants Seek Discovery Do Not "Reside" and Are Not "Found" in This District.

Mr. Suraju and HEDA style their Application as seeking discovery from "J.P. Morgan Chase, Inc." Appl. at i.  But there is no such entity.[5]  Indeed, no proof that Applicants complied with this Court's order (Dkt. 4) to serve the briefing schedule on "J.P. Morgan Chase, Inc." has been provided to the bank's counsel or this Court.[6]  A non-existent entity cannot "reside" nor be "found" in this district (or any district, for that matter).  *See In re Application of Thai-Lao Lignite (Thailand) Co.*, 821 F. Supp. 2d 289, 293–94 (D.D.C. 2011) (dismissing § 1782 request because "non-existent entity . . . neither resides in nor is found in" the district).

Perplexingly, despite naming "J.P. Morgan Chase, Inc." as the Respondent in their Application, Mr. Suraju and HEDA do not seek to subpoena "J.P. Morgan Chase, Inc."  Instead, they direct their proposed subpoena to a different entity, JPMCNCS.  *See* JPMCNCS Subpoena (Dkt. 1-1 at 11–16).  It is unclear why Applicants seek to subpoena JPMCNCS:  that entity had nothing to do with the OPL 245 deal, and the Application does not assert otherwise.

Even if JPMCNCS were an appropriate target of the subpoena—and it is not—the Application would still be inappropriate because JPMCNCS neither "resides" nor is "found" in this district. JPMCNCS is incorporated in and has its principal place of business in New York, *see* Soukup Decl. Ex. 5, and therefore does not "reside" in this district.  *See Qualcomm*, 162 F. Supp. 3d at 1036 & n.48 (companies headquartered in New Jersey and Korea do not "reside" in the Northern District of California).

---

[5] As of June 3, 2022, the online business search databases maintained by the New York Department of State Division of Corporations, Delaware Department of State Division of Corporations, and California Secretary of State returned no hits for any entity named "J.P. Morgan Chase, Inc."

[6] The proof of service Applicants filed indicates that they attempted service of the Court's order on "JP Morgain [*sic*] Chase, Inc.," which appears to be a non-existent entity.  *See* Dkt. 8.  Applicants admit that they have no record of serving the Application on "J.P. Morgan Chase, Inc." until June 7, 2022, the day before this response was due.  *See* Dkt. 12.

---

For JPMCNCS to be "found" in this district, it must engage in "systematic and continuous local activities" here. *Id.* at 1035 ("When applied to corporations, the word 'found' 'may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence.'").

Applicants attempt to show that JPMCNCS is "found" in the Northern District of California by pointing to two webpages that deal with a different legal entity, JPMorgan Chase & Co.,[7] and one of its businesses, J.P. Morgan Wealth Management.[8]  *See* Appl. at 4 & n.1.  Applicants do not explain what connection "J.P. Morgan Wealth Management" (which is not a legal entity) has to the target of the proposed subpoena, JPMCNCS, which in turn has no connection to the facts and circumstances at issue in this petition.  Applicants no doubt chose to file their Application in this district because of its connection to Yahoo and, in the hope of tacking on a request for discovery from JPMCNCS, apparently searched the web for "J.P. Morgan San Francisco" and pasted whatever they could find into their Application.  But Applicants have not even attempted to advance any legal or factual basis for disregarding corporate formalities and attributing those separate businesses' alleged contacts with this district to JPMCNCS.  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015) (only in "certain limited circumstances" can "the veil separating affiliated corporations . . . be pierced" to attribute one corporation's contacts with a forum to another); *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1004 (N.D. Cal. 2020) ("Disregarding the corporate entity is recognized as an 'extreme remedy,' and courts will only pierce the corporate veil in 'exceptional circumstances.'" (citation omitted)).  As a result, there is no support for Applicants' contention that JMPCNCS can be "found" in the Northern District of California for purposes of § 1782(a).  *See Qualcomm*, 162 F. Supp. 3d at 1035; *Thai-Lao Lignite*, 821 F. Supp. 2d at 293–95 (dismissing § 1782(a) petition because the petitioners had not substantiated their conclusory allegations that the discovery targets had "systematic and continuous contacts" with the district such that they would be subject to "in personam jurisdiction" and thus could be "found" there "for section 1782 purposes").

---

[7]  San Francisco Bay Area, JPMorgan Chase & Co., https://www.jpmorganchase.com/impact/communities/our-markets/city-partnership-san-francisco-bay-area (last visited June 8, 2022).

[8]  San Francisco Office, J.P. Morgan Wealth Management, https://www.jpmorgan.com/wealth-management/wealth-partners/offices/san-francisco (last visited June 8, 2022).

1

2

Because Applicants do not seek discovery from a person that "resides or is found" in this district, their Application should be dismissed in its entirety as to the two purported J.P. Morgan entities it names.

### 2. Whether Yahoo is Headquartered in This District Has No Bearing on Whether JPMCNCS Is "Found" Here.

Applicants' alternative theory for their contention that JPMCNCS can be "found" in the Northern District of California is an improper attempt to bootstrap the JPMCNCS Subpoena to the Court's jurisdiction over Yahoo. According to Applicants, JPMCNCS can be "found" here because (a) JPMCNCS has "control" over emails that Yahoo holds on its servers and (b) Yahoo is headquartered in Sunnyvale, California. *See* Appl. at 4. This argument is based on unsubstantiated and incorrect factual assumptions and a misunderstanding of the applicable legal standards.

First, whether JPMCNCS has "control" over documents on Yahoo servers is entirely irrelevant to whether JPMCNCS is "found" in this district. In effect, Applicants are trying to impute Yahoo's presence in this district to JPMCNCS. But under the plain language of § 1782(a), venue is appropriate in a district only if the person from whom an applicant seeks discovery "resides or is found" there—not if the person merely "controls" documents held by a third party who resides in the district. *See* 28 U.S.C. § 1782(a).

Second, even if the answer to that question were relevant, Applicants have not established (and could not establish) that JPMCNCS has "control" over any emails that Yahoo holds on its own servers. For purposes of Fed. R. Civ. P. 34, a party has "control" of documents that a third party possesses only if the party has "the legal right to obtain [the] documents on demand." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). "The requisite relationship is one where a party can order the third party having actual possession of the information to provide [it]." *Montanez v. Gerber Childrenswear, LLC*, 2011 WL 13128157, at *2 (C.D. Cal. June 6, 2011). Phrased another way, "the practical ability to obtain documents on demand" and "[t]he legal right to obtain documents on demand" are "two distinct things," *Franklin v. Ryko Corp.*, 2008 WL 11334493, at *5 (C.D. Cal. Oct. 22, 2008), and only the latter could be used to establish that JPMCNCS has "control" over any emails on Yahoo's servers.

---

1
2
3
4
5
6
7
8
9

Applicants identify nothing that gives JPMCNCS (or any other J.P. Morgan entity for that matter) the legal right to demand that Yahoo produce emails from any of the accounts at issue.[9]  "Legal right suggests an ownership interest, a binding contract, a fiduciary duty, or some other legally enforceable arrangement."  *Id.*; *see also, e.g.*, *In re NCAA Student-Athlete Name & Likeness Litig.*, 2012 WL 161240, at *3 (N.D. Cal. Jan. 17, 2012) (NCAA did not "control" documents held by its member institutions because "[n]either the NCAA Constitution nor the Bylaws" granted the NCAA the "legal right" to demand those documents).  Applicants point to nothing that shows JPMCNCS has such a right, even though as "[t]he part[ies] seeking production of the documents," they "bear[] the burden of proving that the opposing party has such control."  *Int'l Union*, 870 F.2d at 1452.

10
11
12
13
14
15
16
17
18
19
20
21
22

Instead, Applicants assert that, under the Stored Communications Act ("SCA"), JPMCNCS could "consent" to Yahoo releasing emails that were addressed to @jpmorgan.com or @chase.com accounts, and then they equate that ability to give "consent" with the "legal authority" to demand that Yahoo produce the emails.  *See* Appl. at 4.  But even if JPMCNCS chose not to object to the release of particular emails from the Yahoo accounts at issue,[10] it would remain Yahoo's decision whether to release those emails.  "Under the plain language" of the SCA, while an email recipient's "consent may *permit* production by a provider, it may not *require* such a production."  *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012); *see also* 18 U.S.C. § 2702(b) ("A provider described in subsection (a) *may* divulge the contents of a communication— . . . (3) with the lawful consent of the originator or an addressee or intended recipient of such communication." (emphasis added)); *Schweickert v. Hunts Point Ventures, Inc.*, 2014 WL 6886630, at *13 (W.D. Wash. Dec. 4, 2014) ("Even if the Court could compel Plaintiff to consent to the disclosure of some [of] her emails under Rule 34, the providers would still only be permitted, but not required, to turn over the contents under 18 U.S.C. § 2702(b)(3).").  Thus, even factoring in the SCA,

23
24
25
26
27

[9] Though "control" requires "[t]he legal right to obtain documents on demand," and not just "the practical ability to obtain documents," *Franklin*, 2008 WL 11334493, at *5, JPMCNCS has neither.

[10] Without knowing what emails may exist and the substance of those emails (including whether they contain confidential financial information), it is impossible for any J.P. Morgan entity to provide consent *ex ante*.

28

J.P. MORGAN CHASE NATIONAL
CORPORATE SERVICES, INC.'S OPPOSITION
TO 28 U.S.C. § 1782 APPLICATION

13

Case No. 3:22-MC-80072-SK

1    JPMCNCS has no legal right to demand that Yahoo produce any of the emails that Applicants seek, and

2    thus JPMCNCS does not "control" any of those emails within the meaning of Rule 34.

3          Applicants' cases do not establish otherwise.  Applicants cite (Appl. at 4) three cases that explain

4    that, in discovery, a party has "control" of documents that it has a legal right to demand from a third

5    party,[11] and one case that observes (without deciding) that a § 1782 application might be able to request

6    documents held outside the district, because the statute appears to "require[] only that the party from

7    whom discovery is sought," not the discovery itself, "be 'found'" in the district, *In re Stati*, 2018 WL

8    474999, at *5 (D. Mass. Jan. 18, 2018) (citation omitted).  None of the cases establish either (a) that

9    JPMCNCS has "control" over emails in Yahoo accounts or that (b) a party is "found" in a district if it has

10   "control" over documents held by a third party who resides in the district.  And for the reasons discussed,

11   Applicants could not establish either proposition if they tried.

12         **B.      Applicants Have Not Established that the Broad Discovery They Seek Is "For Use in
                     a Proceeding in a Proceeding in a Foreign or International Tribunal."**

13         A court may not order discovery under § 1782 unless it is "for use in a proceeding in a foreign or

14   international tribunal."  28 U.S.C. § 1782(a).  To establish that the discovery sought is "for use" in a

15   foreign proceeding, a party must identify either an actual proceeding or "planned proceedings [that] must

16   be within *reasonable* contemplation" of being initiated.  *Certain Funds, Accounts and/or Inv. Vehicles v.*

17   *KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015) (applicant "must provide some objective indicium that

18   the action is being contemplated").  From there, the "party seeking discovery pursuant to § 1782 must

19   show that the discovery sought is relevant to the claims and defenses in the foreign tribunal." *Rainsy*, 311

20   F. Supp. 3d at 1110; *see also Digital Shape Techs., Inc. v. Glassdoor, Inc.*, 2016 WL 5930275, at *3 (N.D.

21   Cal. Oct. 12, 2016) ("The party issuing the subpoena has the burden of demonstrating the relevance of the

22   information sought . . . .").

23         Applicants contend that the emails they seek would be for use in (1) Mr. Suraju's defense in

24   criminal proceedings in the Federal High Court of Nigeria, (2) "a possible malicious prosecution

---

[11] *See Alma M. v. Nulick*, 2017 WL 117858, at *2–3 (E.D. Cal. Jan. 11, 2017); *Soto v. City of Concord*, 162 F.R.D. 603, 619–20 (N.D. Cal. 1995); *Buckley v. Vidal*, 50 F.R.D. 271, 274 (S.D.N.Y. 1970).

1    proceeding against Mr. Adoke," and/or (3) an allegedly ongoing civil defamation action against Mr.

2    Adoke in the High Court of the Federal Capital Territory, Nigeria.  Appl. at 1–2.  The Application fails,

3    however, to establish that the malicious prosecution and criminal proceedings are pending or that the

4    years' worth of emails that Applicants seek are relevant to the civil defamation proceeding.

5         1.     Applicants cannot establish that the discovery would be of use to Mr. Suraju in defending

6    against criminal charges.  Applicants admit that "[t]he government in Nigeria . . . recently dropped th[e]

7    claim" that Mr. Suraju forged the June 2011 Email.  Appl. at 1.  They have failed to update the Court that

8    Nigerian prosecutors also have since dropped all remaining charges against Mr. Suraju.  *See* Omoaka

9    Decl. ¶ 5 & Ex. 1.  As a result, there is no longer any pending criminal proceeding for which Mr. Suraju

10   would require this broad discovery, and there certainly is no factual basis to believe new charges are

11   "within reasonable contemplation."  *Certain Funds*, 798 F.3d at 123–24.

12        2.     Similarly, Applicants have not established that the materials they seek would be "for use"

13   in "a possible malicious prosecution proceeding."  Appl. at 2*.*  As Applicants admit, there currently is no

14   malicious prosecution suit pending in Nigeria or anywhere else.  Although Applicants say it is "possible"

15   Mr. Suraju might sue Mr. Adoke for malicious prosecution in the future, they provide no "concrete basis"

16   from which the Court "can determine that the contemplated proceeding is more than just a twinkle in

17   counsel's eye."  *Certain Funds*, 798 F.3d at 124.  The "embryonic" desire to file a lawsuit, without more,

18   is not enough to justify discovery under § 1782.  *In re Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y.

19   2017).  Neither the Application nor the attached declarations provide any "objective indicium" that Mr.

20   Suraju is actively preparing to bring this suit.  *Certain Funds*, 798 F.3d at 123.

21        3.     That leaves Mr. Suraju's pending civil defamation claim, but Applicants have not shown

22   that the broad discovery they seek would be relevant to the claims in that proceeding.  The "Statement of

23   Claim" Mr. Suraju filed in that case shows that his defamation claim arises from the criminal complaint

24   in which Mr. Adoke accused Mr. Suraju of fabricating the June 2011 Email and an audio recording of a

25   supposed interview of Mr. Adoke.  *See* Oloruntola Decl. Ex. F at 5–14 (Dkt. 1-2 at 18–27).

26        The requests in the proposed JPMCNCS Subpoena can be divided into two buckets.  First,

27   Applicants request the June 2011 Email and its metadata (Requests 1, 3, 4, 5).  JPMCNCS Subpoena,

28

Attach. A at 2 (Dkt. 1-1 at 16).  If the June 2011 Email still existed, it ostensibly would be relevant to the defamation proceeding.  But, as Mr. Suraju's counsel knows from the parties' meet-and-confer efforts, the bank could not locate the email after conducting a reasonable search.  *See* Soukup Decl. Ex. 2 at 10.

As to their remaining requests, Applicants have not established that these requests—for years of email correspondence with three separate Yahoo accounts—are in any way relevant to Mr. Suraju's defamation claim.  Applicants are seeking all emails:

- between agroupproperties@yahoo.com and any @jpmorgan.com email address (from January 1, 2011 to January 1, 2014) (Request 2);

- from agroupproperties@yahoo.com (from January 1, 2010 to January 1, 2013, and from June 1, 2017 to the present) (Request 7);

- from ayaymalami@yahoo.co.uk (from January 1, 2010 to January 1, 2013, and from June 1, 2017 to the present) (Request 7); and

- between mabdoke@yahoo.com and any @jpmorgan.com email address (Request 6).

JPMCNCS Subpoena, Attach. A at 2 (Dkt. 1-1 at 16).

Applicants briefly explain their theory of relevance by claiming that they want to know whether Mr. Adoke worked with the owner of, or used, the agroupproperties@yahoo.com account, and whether Mr. Adoke or his successor as Attorney General of Nigeria ever discussed "the [June 2011] email[] or Mr. Olanrewaju Suraju."  Appl. at 6.  But Applicants did not tailor Requests 2, 6, and 7 to even those broad aims.  They instead seek <u>all</u> emails between three Yahoo accounts and any @jpmorgan.com account over eight-plus years, regardless of subject matter.  *See* JPMCNCS Subpoena, Attach. A at 2 (Dkt. 1-1 at 16). By definition, these emails will not help discover the true identity of the sender of the June 2011 Email.

The conduct of Mr. Suraju's counsel during the meet-and-confer process confirms that his requests are not relevant to any issue in the Nigerian proceedings.  If these requests were relevant and tailored to the Nigerian proceedings, Mr. Suraju's counsel would have raised them during the months-long meet-and-confer process.  Yet, Mr. Suraju never asked *the bank* to search for these documents before he filed his Application.  Indeed, it was not until the very end of the meet and confer process, when Mr. Suraju's counsel asked the bank to consent wholesale to the Yahoo Subpoena, that Mr. Suraju even mentioned the

mbadoke@yahoo.com and ayaymalami@yahoo.co.uk accounts and indicated that he intended to pursue emails (from Yahoo) stretching back as far as 2010 and as far forward in time as the "present." *See* Soukup Decl. Ex. 4. And when the bank's counsel asked Mr. Suraju's counsel to explain how these new requests of Yahoo would be relevant to the Nigerian proceedings, they never answered. At no point before filing this Application, and at no time since, has Mr. Suraju or his counsel explained why it is necessary to pursue years of emails from the bank or Yahoo, regardless of subject matter, from these accounts.[12]

Because Applicants do not link their sweeping requests to the needs of the civil defamation action—or any other pending or contemplated action—they cannot establish that the requested discovery would be "for use" in a foreign proceeding. That alone is grounds for denying their requests. *See Rainsy*, 311 F. Supp. 3d at 1110–12 (certain requests did not satisfy § 1782 because petitioner had not shown the information was of more than "marginal relevance" to the foreign proceedings); *In re Al Sadeq*, 2021 WL 2828810, at *3 (N.D. Cal. Mar. 30, 2021) (Kim, M.J.) (denying applicants' request to serve subpoenas on Google and Dropbox to identify hackers because it was "unclear how the information," "even if probative of hacking," "would be relevant to the substance of the underlying claims" in the foreign proceedings).

\* \* \*

Because Applicants fail to meet § 1782's requirements, they cannot pursue discovery through this statute. The Court therefore can and should deny the Application without addressing the *Intel* factors.

## II. The *Intel* Factors Support Denial of the Application.

Even if Applicants had satisfied the statutory prerequisites in § 1782, the Court would still "retain[] substantial discretion to . . . deny the requested discovery" under the *Intel* factors. *Khrapunov*, 931 F.3d at 926. First, Mr. Suraju could obtain the same discovery through the defamation action in Nigeria, so it is not necessary to grant him duplicative discovery through § 1782. Second, Applicants' sweeping requests are unduly burdensome. Either of these reasons provide a basis to deny the Application.

---

[12] For that matter, the Application offers no evidence (other than the Applicants' *ipse dixit*) that the ayaymalami@yahoo.co.uk and mbadoke@yahoo.com accounts even belong to the current and former Attorneys General of Nigeria, respectively. It is hard to take that assertion at face value, not least because in the Yahoo Subpoena, Applicants alternate between requesting records for ayamalami@yahoo.co.uk and ayaymalami@yahoo.co.uk. *See* Yahoo Subpoena, Attach. A at 3 (Dkt. 1-1 at 10).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.     Applicants Have Not Established that the Discovery They Seek Is Unavailable Through the Nigerian Proceedings.**

The first *Intel* factor considers whether § 1782 aid is necessary for the Applicants to obtain the discovery they seek. *See MetaLab Design Ltd. v. Zozi Int'l, Inc.*, 2018 WL 368766, at *2–3 (N.D. Cal. Jan. 11, 2018). "Courts have held that '[a]lthough the case law'" surrounding this factor "'at times refers to whether the 'person' [from whom the applicant seeks discovery] is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through the foreign proceeding.'" *Id.* at *3 (citation omitted). "[C]ourts have interpreted this [first *Intel* factor] to focus on whether the evidence 'is available to the foreign tribunal,' because in some circumstances, evidence may be available to a foreign tribunal even if it is held by a non-participant to the tribunal's proceedings." *Qualcomm*, 162 F. Supp. 3d at 1039; *see also id.* at 1039 n.68 (collecting cases); *In re Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016) ("[T]he key issue is whether the material is obtainable through the foreign proceeding.").

Discovery through the U.S. court system is unnecessary here because Applicants could obtain the discovery at issue directly from the Yahoo account holders in Nigeria by serving party discovery and/or issuing subpoenas in the civil defamation proceeding in Nigeria. *See* Omoaka Decl. ¶¶ 8–19. As a threshold matter, Mr. Suraju and HEDA request emails from an account that they contend belongs to Mr. Adoke (mbadoke@yahoo.com). *See* Appl. at 1–2, 6; JPMCNCS Subpoena, Attach. A at 2 (Dkt. 1-1 at 16). Mr. Adoke is the defendant in Mr. Suraju's civil defamation suit. *See* Appl. at 2, 5; Oloruntola Decl. Ex. F (Dkt. 1-2 at 13–72). Mr. Suraju can therefore request that Mr. Adoke produce emails from that account through ordinary mechanisms of party discovery in Nigeria. *See* Omoaka Decl. ¶¶ 10–12. In addition to the emails from Mr. Adoke's account, Applicants request emails from accounts that they contend belong to Abubakar Aliyu (agroupproperties@yahoo.com) and Abubakar Malami (ayaymalami@yahoo.co.uk). *See* Appl. at 2, 5–6; JPMCNCS Subpoena, Attach. A at 2 (Dkt. 1-1 at 16). Both are Nigerian citizens that presumably reside in Nigeria; indeed, Mr. Malami is Nigeria's Attorney

General.  *See* Appl. at 2.[13]  Mr. Suraju could therefore subpoena Mr. Aliyu's and Mr. Malami's emails

through the Nigerian courts. *See* Omoaka Decl. ¶¶ 13–19.[14]  There is no need to compel a *third party in*

*the United States* to produce those emails when they could be retrieved much more efficiently from Mr.

Adoke and other Nigeria citizens in Nigeria. *See, e.g.*, *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886,

at *5–6, *10 (E.D. Mich. Sept. 25, 2012) (concluding § 1782 relief was unnecessary and quashing

subpoenas requested by party to a Brazilian suit because "the Brazilian court has the power to order the

production of the evidence sought").

In fact, Mr. Suraju has already shown that he has discovery options available to him in Nigeria,

including to obtain discovery from Mr. Malami, the current Attorney General of Nigeria.  Before

prosecutors withdrew the criminal charges against him, Mr. Suraju persuaded the court overseeing his

case to issue several subpoenas, including one to Attorney General Malami.  *See* Omoaka Decl. ¶ 6 & Ex.

2.  Though the decision to drop all charges against Mr. Suraju nullified those particular subpoenas, Mr.

Suraju could request similar subpoenas in his civil defamation action as it proceeds.  *See id.* ¶¶ 8–19.

A nearly identical situation arose in *MetaLab Design Ltd. v. Zozi International, Inc.*  In that case,

MetaLab filed a § 1782 application that asked a judge in this district to order a third party company to

produce "communications . . . sent or received" by Adam Wood, a former employee that MetaLab had

sued in a Canadian court.  *MetaLab*, 2018 WL 368766, at *1, *3.  "But MetaLab [had] not explain[ed]

why the Canadian court cannot compel the discovery, or why MetaLab cannot otherwise obtain the

---

[13] *See* Omoaka Decl. Ex. 3 (Nigerian Federal Ministry of Justice webpage explaining that "Mr. Abubakar Malami, SAN, the Attorney General of the Federation and Minister of Justice . . . was sworn into office . . . on November 15, 2015.").

[14] *See also* Fadesike Salu & Safiat Akande, Litigation and Enforcement in Nigeria:  Overview, Thomson Reuters: Practical Law Country Q&A (Apr. 1, 2021), https://tinyurl.com/bdcpa5t9 (in Nigeria, "[w]here a document required by a party to prove its case is in the possession of the adverse party or a third party unwilling to produce the document, the party that requires the document may apply to the court for the issuance of a *subpoena duces tecum* to compel the party holding the document to produce it"); Dentons ACAS-LAW, *Practice and Procedure for the Issuance and Use of Subpoenas Under the Nigerian Legal System*, Lexology (Sept. 7, 2020),  https://www.lexology.com/library/detail.aspx?g=66ea4721-e481-4493-8d25-ffa6415d0be7 ("Where the document needed by a party in the proof of its case is in the hands of an unwilling or reluctant adverse or even third party, a subpoena duces tecum may be deployed to ensure the said documents are produced in court.").

1   requested discovery directly from Mr. Wood." *Id.* at *3.  Because "MetaLab ha[d] not demonstrated it

2   cannot obtain the discovery from Mr. Wood" through the foreign proceeding, the court concluded that the

3   first *Intel* factor weighed against granting MetaLab's application. *Id.*

4        So too, here.  Mr. Suraju and HEDA have not explained why they could not obtain this discovery

5   directly from Mr. Adoke in the defamation action. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust*

6   *Litig.*, 2013 WL 183944, at *2 (N.D. Cal. Jan. 17, 2013) (granting motion to quash in part because, though

7   the target of the § 1782 application was not a party to the foreign proceeding in Korea, the applicant

8   "actually seeks information" about parties to the Korean litigation and so "has discovery options available

9   to it in Korea"); *In re Pioneer Corp.*, 2018 WL 2146412, at *7 (C.D. Cal. May 9, 2018) (similar).  Because

10  this same discovery sought in the subpoena is available to Mr. Suraju in Nigeria, Applicants cannot

11  establish that § 1782 relief is required, and the first *Intel* factor heavily supports denying their Application.

12      **B.**    **The Discovery Applicants Seek Would Be Unduly Burdensome and Intrusive.**

13       To the extent the preceding arguments are not enough to deny the Application, this Court may also

14  deny the Application because it seeks extraordinarily broad and burdensome discovery that is

15  disproportionate to the discovery's potential usefulness.[15]

16       In considering whether to grant a § 1782 application, courts must weigh whether the applicant's

17  requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  "The proper scope of discovery

18  arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure."

19  *Varian Med. Sys.*, 2016 WL 1161568, at *5.  Accordingly, the discovery must be "proportional to the

20  needs of the case, considering the importance of the issues at stake in the [foreign proceeding], . . . the

21  parties' relative access to relevant information, . . . the importance of the discovery in resolving the issues,

22  and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ.

23  P. 26(b)(1).  "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request

24  confidential information and appear to be a broad 'fishing expedition' for irrelevant information."

25  *Qualcomm*, 162 F. Supp. 3d at 1043.  It is the Applicants' "burden to come to the court with [a] narrowly-

26

27  [15] As noted above, to the extent this Court permits Applicants to serve the proposed subpoena, JPMCNCS
    reserves all rights to move to quash the proposed subpoena, including on burden grounds. *See supra* n.1.

28

---

tailored request in the first instance"; failure to do so is grounds for denying their Application.  *In re Ex Parte Application of Nokia Corp.*, 2013 WL 6073457, at *3 (N.D. Cal. Nov. 8, 2013).

### 1. Respondent Has Already Incurred Significant Burden in Determining that the June 2011 Email and Its Metadata Have Not Been Retained.

Applicants' requests for the June 2011 Email and its metadata are pointless because the email no longer exists in the bank's records, as Applicants have known for months.  *See* Soukup Decl. Ex. 2 at 10. The June 2011 Email was purportedly sent by agroupproperties@yahoo.com to Adebayo Osolake at bayo.o.osolake@jpmorgan.com.  *See* Sweetser Decl. Ex. B (Dkt. 1-1 at 18) (the Forwarded Email). During the meet-and-confer process, the bank's counsel informed Mr. Suraju's counsel that the June 2011 Email could not be located after a reasonable search.[16]  *See* Soukup Decl. Ex. 2 at 10.  The bank offered to provide Mr. Suraju with a copy of the Forwarded Email and its metadata.  *See id.* at 10–11.  But after extended talks over several months, Mr. Suraju instead chose to burden JPMCNCS and this Court with a petition seeking permission to issue a subpoena for an email that he already knows could not be located.

### 2. Petitioner's Remaining Requests Are Overbroad and Unduly Burdensome.

The Applicants' remaining requests are "unduly intrusive and burdensome."  *MetaLab*, 2018 WL 368766, at *4 (citation omitted).  Applicants ask the Court to issue a subpoena that, on its face, would require JPMCNCS to search every email over eight-plus years to any @jpmorgan.com account and to produce all messages between any of those accounts and three separate Yahoo accounts, regardless of their subject or relevance—all while offering only the most conclusory explanation for those requests. Neither case law nor common sense support granting those incredibly burdensome requests.  And it is not the Court or JPMCNCS's responsibility to try to pare back Applicants' requests until they begin to resemble something that is remotely narrowly tailored. *See, e.g.*, *In re Pioneer Corp.*, 2018 WL 4963126, at *6 (C.D. Cal. Aug. 27, 2018) (courts considering a § 1782 application are "not obligated to rewrite a discovery request to narrow it, or to parse an overly broad request" (citation omitted)).

---

[16] If necessary, the bank is prepared to provide a declaration attesting to the efforts it made to locate the June 2011 Email.

None of the information that might exist in the emails at issue has any bearing on who sent the June 2011 Email from the agroupproperties@yahoo.com account—the only relevant factual issue in the only persisting foreign proceeding: Mr. Suraju's civil defamation action.  That question could be answered by producing the June 2011 Email and its metadata.  The bank has been unable to locate its version of the June 2011 Email, but Applicants could seek production of that material from either Mr. Adoke (who, according to them, controls the agroupproperties@yahoo.com account) or from Yahoo.  *See Will Co.*, 2021 WL 5322653, at *3 (while "[t]he need for identifying information, such as IP addresses and contact information, appear relevant to th[e] purpose" of identifying users so the applicant could take legal action in a foreign country, "the relevance of other account information" and "the contents of communications" was "not apparent to this Court"); *In re Takai*, 2021 WL 5205583, at *6 (N.D. Cal. Nov. 9, 2021) (discovery request was "narrowly tailored" because it sought "only sufficient information to identify the individuals" and "d[id] not seek the content of any communications").

Instead, Applicants served sweeping requests that they did not limit temporally or by subject matter.   Request 2 seeks "any and all correspondence, whether email or otherwise," between agroupproperties@yahoo.com and "any persons ending with the suffix @jpmorgan.com" from 2011 to 2014.  JPMCNCS Subpoena, Attach. A at 2 (Dkt. 1-1 at 16).  Request 7 tacks on another six-plus years to Applicants' request for "any and all emails" from agroupproperties@yahoo.com.  *Id.*  Together, then, Applicants would ask JPMCNCS to search nine years of records in every @jpmorgan.com email account and produce "any and all" correspondence with agroupproperties@yahoo.com, regardless of the subject matter.  As burdensome as these asks would be, Request 6 is worse:  Applicants would ask JPMCNCS to search every @jpmorgan.com account and produce "any and all emails" to/from mbadoke@yahoo.com— an account that is not associated with the June 2011 Email—regardless of subject matter.  *Id.*  This time, Applicants include no time limitation whatsoever.  *See id.*  Finally, Applicants would ask JPMCNCS to search for and produce "any and all emails and their attachments from ayaymalami@yahoo.co.uk" over eight years—again, regardless of subject matter—without providing any factual basis to believe this account ever corresponded with any @jpmorgan.com address.  *Id.*  Attempting to prove the negative— *i.e.*, that no @jpmorgan.com email account has emails to/from that address—would be an impossible task.

Applicants' requests are thus fatally overbroad and unduly burdensome.  *See Rainsy*, 311 F. Supp. 3d at 1113 (rejecting as "unduly broad and burdensome" a request that Facebook produce "information— even without the content of the messages themselves—between and among eight people with an unlimited time period"); *MetaLab*, 2018 WL 368766, at *4 ("MetaLab's request is overbroad temporally and in scope: it is not limited to a specific time frame and requests all communications between Mr. Wood, Mr. Sassani, and Mr. Wu, regardless of format and whether they relate to the claims or counterclaims asserted in the Canadian Action."); *In re Ex Parte Application of NC Dengen Kaihatsu KK*, 2019 WL 1061740, at *4 (N.D. Cal. Mar. 6, 2019) (document request was "not narrowly tailored because [it was] unlimited by either time or content restrictions" and thus "encompass[ed] every communication ever made by EverStream about the additional projects, even though [the applicant] has made no showing as to the relevance of those communications"); *Qualcomm*, 162 F. Supp. 3d at 1044 (rejecting discovery requests because they were "not narrowly tailored temporally, geographically or in their subject matter," and were "not limited to documents or information connected to the [foreign] proceedings at issue").

Applicants make no attempt to justify or excuse the extreme burden their requests would impose on JPMCNCS.  Indeed, Applicants argue only that their requests to Yahoo are narrowly tailored, because "[Applicants] have limited the emails requested to those exchanged by specific addresses," which "should make them relatively easy for *Yahoo!, Inc.* to identify and to provide."  Appl. at 7 (emphasis added). Applicants never even argue that the requests would be easy for *JPMCNCS* to respond to.

Nor could they:  while Applicants contend that Yahoo would need to search only three Yahoo accounts to identify responsive emails, **JPMCNCS would have to search every J.P. Morgan email account in use during the relevant time period to comply with the proposed subpoena**.  For an estimated tens of thousands, if not hundreds of thousands, of email accounts, J.P. Morgan would first have to collect email data for each custodian individually.  Once collected, this enormous amount of data would then have to be processed and loaded to an extremely large review platform before it could be searched, and then all results from that search would have to be reviewed individually for responsiveness.  The proposed search also creates a host of complex data privacy issues, because it would seek discovery from custodians across the globe.  That type of investigation would not be feasible or reasonable in any case

1
2
where a J.P. Morgan entity is a party, let alone a § 1782 proceeding in which the same discovery could be had from other, more appropriate sources for far less cost.

3
4
5
6
7
8
9
10
11
In an effort to be accommodating, the bank conducted three searches for Mr. Suraju during the meet-and-confer process using a database of custodial records that had been collected in connection with litigation in England between the bank and the Federal Republic of Nigeria.  But as recounted above, each of those searches produced no responsive records.  *See supra* pp. 5–6.  Applicants have given no explanation why JPMCNCS should now be required to conduct an entirely new, infinitely more expansive and expensive collection, and run all new searches, in the purely speculative hope that they might turn up some emails that could be of either marginal or no relevance to the issues in the Nigerian defamation proceeding.  This is especially true given that Applicants never shared their overbroad subpoena with the bank during the parties' meet-and-confer process.

12
13
14
15
16
The overbreadth of Applicants' proposed subpoena is grounds alone to deny the Application.  It was Applicants' "duty in the first instance to draft narrowly tailored requests for relevant information."  *Baxalta Inc. v. Genentech, Inc.*, 2016 WL 11529803, at *8 (N.D. Cal. Aug. 9, 2016).  "[I]t is not the obligation of [JPMCNCS] or this Court to attempt to re-draft highly overbroad, disproportionate subpoenas."  *Id.*  The Court should decline to issue the JPMCNCS Subpoena.

17
18
**III.    This Court Should Not Order JPMCNCS to "Consent" Sight Unseen to the Release of Any and All Documents Yahoo May Possess.**

19
20
21
22
23
Mr. Suraju and HEDA mention briefly that they "are also seeking an order compelling the employer of the recipient of the emails, J.P. Morgan Chase, to consent to th[e] discovery [from Yahoo] as an addressee."  Appl. at ii.  They have not established that the Court has the authority to issue such an order—let alone that it is JPMCNCS's consent that Applicants would require in this particular instance.[17]  *See, e.g.*, *Laub v. Horbaczewski*, 2020 WL 7978227, at *5 (C.D. Cal. Nov. 17, 2020) (declining to "compel

24
25
26
27
[17] Applicants assert that the "J.P. Morgan" entities named in the Application could consent to the release of the emails because they would have "employe[d]" any @jpmorgan.com or @chase.com account holders who received emails from the Yahoo accounts in question.  Appl. at ii.  But Applicants have not provided any factual basis for that assertion.  Moreover, Applicants could not actually establish *ex ante* that JPMCNCS employed any such recipients, whose identity remains unknown.  Under Applicants' own theory, JPMCNCS cannot consent to any production sight unseen.

28

Defendants to consent to [a] subpoena to Slack so that Slack can produce the messages" and noting that "Plaintiffs do not cite to, and the Court is not aware of, any authority that permits the Court to compel a non-consenting party's *consent* to a subpoena served by an opposing party on a non-party for documents"). Even if Applicants had established that much, JPMCNCS could not consent to the release of the emails encompassed by Requests 9–11 of the Yahoo Subpoena (or Request 7 of the JPMCNCS Subpoena), which are not limited to emails to/from employees of any J.P. Morgan company. *See* Yahoo Subpoena, Attach. A at 3 (Dkt. 1-1 at 10); JPMCNCS Subpoena, Attach. A at 2 (Dkt. 1-1 at 16).

Applicants' request for an order compelling JPMCNCS to consent to the Yahoo Subpoena also suffers from the same problems as Applicants' documents requests.  Rather than accept the bank's compromise offer that the bank would (1) not object to Yahoo's production of the June 2011 Email and (2) be willing to discuss the release of other emails with Yahoo, *see supra* p. 6, Applicants now demand that JPMCNCS consent sight unseen to the release of years' worth of emails, regardless of the subject matter.  Like the document requests, this final demand is extraordinarily broad, unduly intrusive, and not narrowly tailored to Mr. Suraju's claims in the Nigerian defamation proceeding.  Accordingly, the Court should deny the Applicants' request for an order compelling JPMCNCS to give blanket consent to Yahoo's release of "any and all emails" responsive to the Applicants' incredibly broad subpoena to Yahoo.

## CONCLUSION

J.P. Morgan Chase National Corporate Services, Inc. respectfully requests that the Court deny the Application in its entirety.

DATED: June 8, 2022

Respectfully submitted,

By:   */s/ Lindsey Barnhart*

Lindsey Barnhart (Bar No. 294995)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone:  +1 (650) 632-4700
Facsimile:  +1 (650) 632-4806
Email:  lbarnhart@cov.com

*Attorneys for Respondent J.P. Morgan
Chase National Corporate Services, Inc.*

Andrew Soukup (o*f counsel*)
Jordan L. Moran (*of counsel*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 778-5066
Email:  asoukup@cov.com
          jmoran@cov.com